May it please the court, opposing counsel, my name is Claire Cahoon, and on behalf of the Federal Public Defender's Office, I represent David Ziesel in this case. I respectfully reserve three minutes for a law. The district court imposed a procedurally unreasonable sentence on Mr. Ziesel by applying the physical restraint enhancement inappropriately. Guideline 2B.3.1.B.4.B provides a two-level enhancement for physical restraint to facilitate commission of the offense or to facilitate escape in robbery offenses. The commentary to that application note, which can also be found as a definition in Section 1B.1.1.L, defines physical restraint as forcible restraint of the victim, such as being tied, bound, or locked up. The background provided by the guidelines for 2B.3.1 also indicate that this guideline applies where there is physical restraint by being tied, bound, or locked up. In this case, Mr. Ziesel robbed a bank by entering it unarmed, demanding money, and then right before fleeing, asking the, telling the tellers to get on the ground. This kind of action is certainly a standard bank robbery, but it's not the kind of special conduct that triggers the physical restraint enhancement. An enhancement is a provision that's drafted to deal with special circumstances, and that is specifically why they should be narrowly construed. The physical restraint enhancement is not just any restraint. It's a physical restraint. And it's not just any physical restraint. It's a forcible restraint, not just any show of force. And that's based specifically on the plain language of the guideline enhancement as well as its interpreting commentary. And that interpretation is also consistent with this Court's case law on the subject. Judge Rogers and his colleagues in the United States v. Coleman addressed the enhancement admittedly under dissimilar facts because there was a firearm involved in that case and significantly more movement. In Coleman, the defendant had gone into a bank and ordered one of the tellers to leave his office at gunpoint and come and stand, or excuse me, sit down in the lobby so that that robber could keep a closer eye on him. I think appropriately, the Coleman court determined that that was an act of physical restraint. That was forcible restraint. That was? Yes, Your Honor. I think that's correct. However, the example that the Coleman court uses is what would not constitute physical restraint is exactly the kind of conduct we have here. So what the Coleman court said was it's not as though he had merely ordered this person to sit down and remain in place. That kind of conduct would not have been sufficient. That's the conduct that we have at issue here. Where Judge Carr went wrong in applying this enhancement is he considered two things that aren't relevant to the question of whether someone has been tied, bound, locked up, or something similar as required by this guideline. Judge Carr considered the question of potential harm in evaluating whether the enhancement applied. He said, well, I think there's always a potential for harm when a bank robbery occurs, and so I think there's a physical restraint here. He also considered the degree of control by saying, well, I don't think the tellers probably felt free to leave. Mr. Ziesel had control over them, and so this is physical restraint. But with all due respect to Judge Carr, that's a misinterpretation of what this enhancement is designed to punish. So in this case, is the standard that we're looking at in terms of reasonableness of control or whatever, is that an objective or a subjective standard? It's definitely an objective standard based on the defendant's conduct, not the subjective and frankly unknowable psychological experience of the victims. And it has to be, because it's impossible to know exactly what an individual is experiencing in an individual moment. This enhancement is designed to punish the conduct of the defendant. And so where the conduct is particularly egregious, for example, a defendant has tied up all of the victims in a back room. There's an enhancement that's designed to punish that conduct, because that's a particularly egregious… It's particularly egregious. I try to think about why it's egregious. It's egregious because the people feel helpless. They can be kicked or whatever, suffer, and they can't do anything about it because they're restrained. So I'm drawing in my mind a difference between what force is used to put somebody in restraint as opposed to whether there's restraint. So I have some examples I'd like to ask you about. I get criticized for asking how litigants would rule in a case not before us rather than the case before us, but I like to ask these questions. Suppose there was a simple order to the person in the bank to handcuff himself. Here is a pair of handcuffs. Lock them on your hands. Is that a restraint? I believe that would be a restraint. It would be a restraint, even though I didn't say he aimed a gun at them and said, put the handcuffs on. He just said, put the handcuffs on. So there's a difference between the force used to put them in restraint and the restraint, if you agree with that example. I do. I think if this were at gunpoint, it's certainly a more clear-cut situation. But you just agreed it didn't make any difference whether it was at gunpoint or not. If I hand you the handcuffs and say, please put these on, I'm the bad guy here, put them on, and they put them on, you say, then the enhancement applies, right? It applies in either case. In either case, okay. Yes. So it applies more in one case than the other when it applies in both of them? It applies in either case, even if there's no gun involved. Even if, for instance, the robber said, you know, I have an accomplice watching your children at school, so you better put them on. Put them on. All right? There's no gun. There's no anything. There's some kind of reason to do it. And when they do it, they have the restraint. And to me, that deserves more punishment because that feeling of helplessness or vulnerability is something that's deserving of additional punishment. Now, let me take it to the other side. What if a gun is used and the gun is aimed at you, but instead of imposing any restraint, it just says, hand me the money? Then there's no violation. There's no restraint there, right? There is no restraint, Your Honor. All right. So if you agree with that, then it seems to me we have to look at the restraint and not at the force that was used to put them within the restraint. Right? Your Honor, I believe both things are relevant because it's forceful restraint. Because in your answers to those questions, you made it pretty clear it's not relevant. I think I can clarify. It is forcible restraint. However, to use Your Honor's hypotheticals, if someone is directed to handcuff themselves, I don't think anyone can disagree that that counts as being bound, locked up, or tied up. Even though there was no physical way that that was imposed on them. Right? It's just like you were threatened in general. It's still the same kind of forcible restraint because by virtue of the circumstances and their being tied up or bound. And it gets at the reason for the enhancement. I'm sorry, Your Honor? And it gets directly to the reason for the enhancement. It's directly in line with the guidance that's provided in the commentary for this enhancement. Absolutely. Well, that is what I'm asking. It serves, if you agree with me, that the purpose is to punish for imposing this additional feeling of vulnerability. And it fits within that. I agree that it serves to additionally punish someone where they have tied, locked up, or bound someone. Not the psychological experience of the victims, but the defendant's conduct. Yes. And that is why, in Your Honor's other hypotheticals, someone simply has a gun during the course of a robbery. That's not a physical restraint. But that doesn't mean it doesn't get punished. B-2 provides a range of punishments. I'm just talking about this one. Certainly. This one, it doesn't apply. That's correct, Your Honor. So using a gun isn't really a relevant factor to whether there's physical restraint. Because you can use a gun and not have any physical restraint. You can just say, hand me the money. Use the gun, hand me the money, don't scream. There's no physical restraint there. But there's a threat, and you ought to get punished under something else. I agree with that. But it seems to me that wouldn't subject the crime to this particular enhancement. So if those are correct, then it would seem to me what we look at is not how much force was used to put them in the restraint, but the nature of the restraint that they were put into. And if you agree with that, which it seems to me in effect you have, then you have somebody who is lying on the ground. Now can you imagine how vulnerable somebody feels when they're lying on the ground? They can be kicked. They can be abused. And they can't respond very easily. It's the same kind of thing that restraint is imposed by handcuffs or being locked in a room. So it seems to me what we need to be looking at is whether lying down prone fits the requirements of a physical restraint, regardless of whether a gun was used in making them lie down prone. Are you with me? I'm with you. And respectfully, Your Honor, it does not for several reasons. The first is for this court to agree with the government. One, there is no circuit that has ever interpreted this enhancement so wrong. I'm talking about the logic. We can look at the cases. Cases say lots of different things. What's the logic? Right. The logic seems to me inexorable that the district court was correct. Respectfully, I disagree. Well, I understand. But how do you deal with the examples that we just went through? Right. So where there's a – in Your Honor's example, if we're just looking at David Ziesel's conduct, or conduct that's similar to it, hey, get on the ground, part of what the other circuits have noted is that's going to be the case in almost every bank robbery. But that's just clearly not true. You just go in and aim a gun at him and say, give me the money. There's no restraint. Here they're putting a person in a vulnerable position that's difficult to get out of. You're lying down. It's hard to get out. It's not that you can't get out of it, but it's a vulnerable position, probably more vulnerable than the handcuffs. Well, Your Honor – More difficult to get out and more difficult to fight back than if you're handcuffed. I don't think – That's not consistent with the circuits who have interpreted this question? Your light is on. I really would like to ask that question. No, no, no problem. If we go on the – I guess the logic about the vulnerability of the victim, wouldn't that make the enhancement appropriate almost in any bank robbery? Because there you're looking at the command of the robber and the vulnerability of the victim. But this guideline talks about physical restraint, and I understand that it doesn't have to be hands-on or some kind of physical force. But if we simply deviate so far from that language of the guideline, then this enhancement would apply to almost any bank robbery where the person robbing the bank has a superior position. Even if they just said, turn around, don't look, put your hands over your eyes or whatever, you create a certain vulnerability, don't you? That's exactly right. I can see I'm out of time, but may I complete my answer? That's exactly right, Judge Donald. So with that interpretation, this would apply to most bank robbery cases. Certainly any bank robbery, armed or otherwise, is going to instill fear and compliance in the tellers. That's how bank robberies work, right? And this is the very point made by the Coleman Court. And the Seventh Circuit talks about, in Taylor, how this becomes a ridiculous hypothetical you'd have to come up with where physical restraint wouldn't apply. So the example they give is a bank robber who comes and says, this is a bank robbery, but everyone feel free to move around. Obviously that's not the reality of how a bank robbery occurs. Typically in a bank robbery, someone is coming in, whether they're armed or not, and saying, this is a robbery, I want money. They might be saying, stay in place, sit down, lie down. But that's not what physical restraint is designed to punish. As Judge Donald was just pointing out, it's specifically for those special circumstances where there's an additional step being taken, where those victims are being tied up, bound, or locked up in some way. And isn't that your argument, in response to the court's statements below, that whenever somebody says, this is a robbery, then everybody feels apprehensive and, I guess apprehensive is the fair word, or perhaps even helpless. But if that's the case, explain to me why this would be an enhancement and not an element of the crime. That's exactly right, Your Honor. And that's why the enhancement cannot be applied based on the subjective experience of the victims, but rather the objective actions of the defendant that tied up, bound, or locked up. And nor can it be upon our view of what might be subjectively concerning, frightening, or fearful. Doesn't this also tie to an equal use of the enhancement across all of society? Certainly, Your Honor. I think that you've addressed the exact concern here, right? Which is separating it from that subjective emotional experience and looking at specifically how do we punish this defendant's conduct appropriately and also in a way that creates a sentence that's appropriate with similarly situated defendants. But if you told them to get into a hole, even though you didn't use a gun, and all you say about subjectiveness is true, that still wouldn't be enough? Because I'm not seeing how it's that different from saying you have to get into a hole. So there's a separate enhancement for moving to separate locations? Well, I'm talking about this enhancement. Right. So if you ordered a defendant, and I'm trying to imagine how hypothetical it would work, if there's a hole inside the bank that you've ordered the tellers to get into, I think that it's a closer question. Perhaps the argument could be that they couldn't get out. I suppose we need more facts. If they could get out of the hole on their own, then I don't believe it's fiscal restraint under this logic. If they couldn't get out of the hole on their own, let's say it was a well or something, then yes, I think that constitutes fiscal restraint. Thank you for your time. May it please the court, good morning. My name is Matthew Simcoe. I represent the FLE United States of America. On September 11, 2019, the tellers of the State Bank and Trust in a small town in northern Ohio experienced one of the most dangerous and fearful experiences of their lives. Earlier that morning, when no one else was at the bank, David Zeisel, the appellate, entered fully clothed, with a hood up, hat on, and a mask out of something out of a horror movie. He went to the teller at the counter, began reaching across the counter, telling them, open this drawer, open that drawer. When he directed them to the safe, and they couldn't open it in anything else, he ordered them to the ground. In their fear and in their apprehension, they complied. David Zeisel didn't use physical touching in this case, but he did use the terror and fear he was inflicting upon them to control them. Then what is the limiting principle that makes this an actual enhancement to a crime, and not simply an element of the underlying robbery? Two things, Your Honor. First of all, that in this case, they have to actually move the person or order them down. You're in a prone position, as the court found. And also, what we didn't discuss in the earlier argument is the latter part of that enhancement, that is, to facilitate the crime or to aid the escape. So I think in these two things, you would have to make two findings. One, that he controlled the victim, or someone would have to control the victim through fear, imparting that somehow, and then also that it would have to aid in the escape in this case or in the commission of the crime. Well, isn't there sort of a logical presumption that in any bank robbery, whether there's a weapon or not, that fear is going to be an element of that and when the person comes in, as Judge Strange said earlier, and demands money, people are going to be fearful. And if that's the case, let's say in a hypothetical, the robber comes in, identifies himself as the robber, and in order to facilitate the crime, tells the tellers to each turn their back so that they're not looking at him. Is that enough to trigger this enhancement? It might, Your Honor. Depending if the court would find that objectively sufficient fear was being imparted on them and that it was to facilitate the crime or aid in his escape, it might. But I think we have to look at the facts of that particular case. What language in this enhancement would one look to to make those facts that I just talked about fit? Well, I suppose not necessarily to the language of the guideline itself, but to the court's findings in earlier cases, specifically Coleman, which we discussed earlier, and Appellant's argument. A defendant restrains a person when he leaves the person with no alternative but to compliance. I think that's a standard that the court could look to a case, and the facts of a particular case, and find that to be true. So turn your back, don't look at me, is enough to meet the restraint, could be enough to meet the restraint language. And if we go that far, then can you envision a bank robbery scenario where the enhancement would not fit? Yes, Your Honor, I can. And I don't think I have encountered a— I've been doing violent crime in northern Ohio, northwest Ohio, for a few years now, and this is the first time the enhancement has come into a case. And it's not regularly applied. Last year it was applied 22% of the time. Between this year and— If you're just aiming a gun and saying, give me the money, it wouldn't apply, would it? Well, I think not. I mean, it was— That's an amazing answer to Judge Connell. This typical thing in a robbery is you go in, you threaten them, you say, give me the money. There's no restraint in common sense meaning of the word. Certainly nothing like lying on the ground. Yes, I would agree. I just think that's an easy answer. Well, in that scenario, it wasn't just pointing a gun at someone. She indicated that, you know, are you changing their position and having them turn around? But in the normal circumstance— Maybe that would be, maybe it wouldn't, but it's not as— The other question that was asked was can you think of anything that would involve a whole heck of a lot of fear and get money out of the bank? It seems to me you could imagine that very easily. You just say, go into the bank, point a gun at them, give me the money, they give you the money, you run out. There's no restraint. That, as well as I suppose even what we call a note job, Your Honor, the most common scenario that we see in bank robberies is handing someone a note. I'm sure that there can't not be some sort of fear in that situation. That would be the normal response. They're giving you the money and you're out the door. Or you could even have a gun. Say, I have a gun in my pocket. On the note. I have a gun in my pocket. Give me the money. Hand them the note. Note. It just seems to me that's an easy answer to the question, isn't this present in every case? I think fear is present in every case. The control or restraint is not. And in this case, what we have before the court is having someone lie down on the ground prone. And also what was the point of that? That was to aid his escape. They had him lie down behind the counter so that they couldn't see where he was going. And also, as Judge Rogers, I suppose, mentioned in the earlier argument, it also puts them in a vulnerable position for which they could be harmed. I'm struggling with the idea that this is whether or not this enhancement applies. It depends upon the level of fear, as you said earlier, that is engendered. Because that's a response that, as your opposing counsel says, we can't know. But it's also a response that seems to me to run the risk of the sentencing goals, proportionality in sentencing, equality in sentencing. I can't see a way that looking at fear won't end up with uneven enforcement. Just think and play into societal bias or thoughts. So the question is, you've got a 6'4 guy, and a little woman comes up to him and says, give me all your money. Is that 6'4 guy in fear sufficiently? Is that the question we're going to ask ourselves? Or let's look at the racial bias issues that there's so much research on. And so many people would admit that they perceive young African American men as threatening and dangerous. So is any time an African American is the guy saying, stop, give me your money, we're going to say, well, that's sufficient fear engendered. And so we're going to apply this enhancement. It just seems to me that to achieve equality in sentencing and application of enhancements, we've got to have an objective criteria. Why is that not accurate? Well, I think it is objective. Certainly I don't think a victim's racial bias or gender bias should play any part in a court's determination. But looking at their subjective response, exactly ask them a question that is the potential for underlying bias, be it gender, be it race, be it nationality. If fear is your moniker, if your fear is your guideline, which you said as you began, I just don't see how that works in a justice system. Well, I don't think that we should use a subjective standard. I think a district court looking at particular facts of the case can ask, would a reasonable person be fearful in this situation and certainly take out any sort of biases the victim or the particular victim would have in that case. Well, this judge said, you know, any time there's a robbery, people are afraid. So the assumption then would be that this enhancement applies to any time there's a robbery because people are afraid. But it's not just the fear. It's what they do with what the defendant does with the fear that he's inflicting upon that individual. In this case, lie down on the ground in a prone position and then in order to aid my escape. So it's not just fear. We're not just punishing fear. Would it be easier just to leave out fear and talk about restraint? Yes. I think how you restrain someone and the way you're able to do that, you have to talk a little bit about. You have to talk about, I suppose, why restraint is a bad thing that deserves greater punishment. Right. You can have all kinds of theories about fear and still say you ought to be punished more if you restrain somebody. Yes, Your Honor. And I think that, I think in this case when the court talks about proportionality and the need for greater punishments in certain situations, here we do have that situation. We have someone in a more vulnerable position, somebody restrained that. What if the comment's definition was physically restrained by being tied, bound, or locked up? How were these, in this case, how were people tied, bound, or locked up or comparable to those three descriptions? In this case, while I would say that I think this court as well as many others have said that's not by limitation but merely by example. In this case, the defendant used his, the presence of himself, the way he clothed himself, wearing a mask and gloves, to order someone to restrain themselves. And while he didn't have a rope to tie around him, he just as much caused them to do a thing that would restrain themselves. Could you answer the question not in terms of what caused it but how much restraint there was? Is being prone comparable to being, what are those three? Tied, bound, or locked up. So is it analogous, for instance, to having handcuffs on or something like that? Or what are those things, those ties that they put around your hand? I think that the court thought that would be a restraint. I think even your prison counsel says that would be a restraint. And you've got to say that being on the ground is a restraint. That, to me, is the key issue, not fear or whatever. Well, I think it is a restraint. Is it the same restraint? It is a restraint. Can you explain how it's a restraint? Well, you're down on the ground. You're in a more vulnerable position. You can't react as easily. Here, the court found that they were in a prone position. Now you're lying down, face down, so they can make an escape. Certainly, you're vulnerable. The defendant or the bank robber in that case is. . . So it's sort of like being tied up. It is. And as a court note, it might be even worse than just sitting someone down on the ground as in Coleman, because that person could easily get up, more easily react. Here, the person is actually down on the ground. But the distinction with Coleman is that the robber said, with his gun pointed at them in an office, get up, come out of the office. What else did he say?  And that falls within the guideline description of a victim forced to accompany the defendant to another location. So that takes care of Coleman. But that's not. . . that's actually abduction. That's the definition of a four-point enhancement for accompanying someone to another location. In Coleman, they didn't find the four-point abduction. They found a restraint. And that one, it was, you know, whether or not someone walks three steps and sits down on the ground or has to lie on the ground face down, it seems to me to be that the latter would be more of a vulnerable position, more of a restraint, and would more easily aid in the latter part of the definition or requirement, that being that it aided the escape or facilitate the crime. What other circuits do you . . . would you argue have decided that just the situation within this case would constitute grounds for the enhancement? I don't have a circuit case in any other circuit that would specifically consider facts like these and support it. But I don't think any circuit, well, at least not this circuit, has certainly disallowed it. It has not said that this situation wouldn't apply. This circuit, as well as other circuits finding similar reasons where you don't need to lock someone up, that . . . it has not said that this is not the situation. It leaves this for another day, and perhaps this is the day. But, no, there's no other circuit that I can point to that says lying someone down on the ground without a weapon would be sufficient. One last question. So that is your limitation, that if you order someone to the ground, they get the enhancement. Is that your limitation on it? Yes, or something similar to that effect. But, yes, Your Honor, if someone orders someone to the ground or in a position to aid their escape, regardless if they have a firearm, that that should be the scenario that this court should set or the limitation this court should set. But you also said earlier that if the robber, without a weapon, orders him to turn their back, that that could qualify for the restraining enhancement. It might, Your Honor. I just don't know the further facts of that case. If there was no . . . you know, if you just said, please turn around . . . All the facts of this case are not hypothetical, except instead of get on the ground, he says, turn around, turn your back, don't look at me. It might, Your Honor. If he exerted control over the victims and, I suppose, restraining them, that just turning around might be too far. It certainly goes beyond this scenario in this case. It might be a bridge too far, but it's certainly further than we're asking the court to go in this case. Thank you. In fact, Your Honor, I'm asking you to affirm the district court's 46-month sentence as procedurally reasonable, as well for the reasons stated in our brief. Thank you. Respectfully, David Ziesel's conduct is not fiscal restraint because that's what this court's jurisprudence has dictated. Coleman uses the example of merely ordering someone to sit down and remain in place, analogous to what Mr. Ziesel has done, is not enough to satisfy the enhancement. And I know that this is not a gun case, but the gun is relevant in Coleman because it's the gun that makes the restraint a forcible restraint in that case. And since there's no gun here and there are mere words, just the act of ordering someone down on the ground is not enough of a fiscal restraint. Using the example that Judge Donald provided to the government, it becomes unworkable. Would turning your back be enough? Would just ordering the teller to look down and not look at the bank record be enough? If there isn't an objective line for fiscal restraint that requires that forcible restraint, then it winds up applying to a whole myriad of situations. And as the Seventh Circuit said in Dubay, which is cited in the briefing, that without that narrow interpretation, the enhancement would be warranted virtually any time an armed bank robber entered a bank. Now, this is not an armed bank robbery, but I think that that reasoning tracks for the situation as well. Physical means, as this court has interpreted in Coleman, requires physical restraint. And without that physical restraint, the guidelines simply cannot apply. The background to this guideline specifically says sometimes, which is limiting language suggesting this enhancement is meant to apply in the extraordinary case where victims are tied, bound, or locked up, not in every case or the majority of cases. And I certainly echo Judge Stranch's concerns about the unevenness of enforcement if a subjective consideration is what guides this enhancement. And so I would respectfully ask this court to reverse the decision of the district court and remand this case for re-sensing without imposition of being fiscal restraint enhancement. Thank you. We thank you both for your good briefing and arguments. We will take the case under written observation.